FERNANDO CORTEZ, Plaintiff and Appellant, *v.* HEIRS OF JOSÉ DOMINGO SOLÁ LÓPEZ, ETC., Defendants and Appellees.

No. 10361. Argued March 1, 1951.—Decided May 31, 1951.

*R. A. Arroyo Ríos* for appellant.   *A. L. López* for appellees.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Fernando Cortez filed suit against the Heirs of José Domingo Solá López, requesting to be recognized as the natural

child of the latter, for the sole purpose of bearing his surname, as provided by Act No. 229 of May 12, 1942, (Sess. Laws, p. 1296) as amended by Act No. 243 of May 12, 1945, (Sess. Laws, p. 814).

Plaintiff alleged in his complaint that he was born in 1893, in the city of Caguas, as the result of the sexual relations sustained by his presumptive father José Domingo Solá López and Guillermina Cortez, mother of the plaintiff; that at the time of plaintiff's conception and birth, José Domingo Solá López was married to Isabel Grillo Santiago, and that until his death the predecessor of the defendant heirs always treated plaintiff as his son, giving him privately and publicly, the love and care of a father, providing always for his needs. The lower court in dismissing the complaint on the grounds that the action had prescribed, stated the following:

"It appears from the evidence that plaintiff Fernando Cortez was born on May 31, 1893; that is, plaintiff was born under the rule of the Spanish Civil Code in force from the year 1889 to 1902. The parties admit, and it also appears from the evidence, that plaintiff's presumptive father, José Domingo Solá López, at the time of the conception and birth of plaintiff was married to Isabel Grillo Santiago. José Domingo Solá López died on August 5, 1918.

"According to § 137 of the Spanish Civil Code of 1889, in force at the time of plaintiff's birth, the action for the recognition of *natural* children (italics ours) shall be filed during the life of the presumptive father, and in case of the latter's death, during the first four years after the son attained his majority. If this proviso were applicable to the present case, there is no doubt that the action would have prescribed, because since plaintiff was born on May 31, 1893, he attained his majority in 1914, and as his presumptive father did not die until August 5, 1918, plaintiff had until this last date to file his action.

"Now, then, in the year 1902 and when plaintiff was 9 years old, the Revised Civil Code became effective on July 1 of that year. Section 199 of said code provided that 'an action to claim filiation may be filed at any time within two years after the child shall become of age.' If we applied such provision to

the present case, we would note that plaintiff then should have filed his action before May 31, 1916, as he became of age on May 31, 1914. It should be noted, of course, that under the Revised Civil Code of 1902 no distinction is made regarding illegitimate children, the natural and adulterine children being thus included according to the Spanish Civil Code.

"Again, and in the year 1911, when plaintiff was 18 years of age, our Legislature amended the Civil Code, insofar as applicable to this case, as according to Act No. 73 of March 9, 1911 (Sess. Laws, p. 234) it expressly repealed § 199 of the Civil Code of 1902, and enacted instead § 194 which is the same as § 126 of our Civil Code of 1930 in force. Section 194 of the Civil Code of 1911 provides that 'the action for the recognition of *natural* children, can only be established during the life of the presumptive parents, and a year beyond their death' . . . We have underscored the word 'natural' as in this instance the Legislature again reinstates the concept of natural children of the Spanish Civil Code, which it had abandoned or rejected in the Revised Civil Code of 1902. When § 199 of the Civil Code of 1902 was repealed and § 194 of 1911 (*supra*) was approved, no prescriptive term was provided for the filiation action of the *illegitimate* children; it only provides for those who had the status of natural children. If we applied § 194, approved in 1911, the action would have also prescribed; since the presumptive father died on August 5, 1918, plaintiff should have, according to said § 194, filed his action not later than August 5, 1919.

"As is well known and definitively established, the action of filiation is of a personal character. *(Orama et al.* v. *Oyanguren,* 19 P.R.R. 788; *Gastón* v. *Heirs of Franceschi,* 43 P.R.R. 285; *Torres* v. *Heirs of Cautiño,* 70 P.R.R. 614, 619.) If we take into consideration that none of the limitation periods cited, *supra,* is applicable to the present case and if we applied the suppletory term of prescription established for personal actions, the limitation of which is 15 years (§ § 1865, Civil Code of 1902 and 1864 of 1930), we would also have to reach the conclusion that plaintiff's action in this case has prescribed, because since he attained his majority on May 31, 1914, he should have filed the action at least 15 years later, that is, in 1929.

"Of course, plaintiff might argue that at the different times which we have mentioned in which he could have filed his action,

Act No. 229 of May 12, 1942 as amended by Act No. 243 of 1945, did not exist, and therefore, that he could not have filed the present action. He might be right, but unfortunately for him, Act No. 229, *supra,* has only a prospective and not a retroactive effect. (*Correa* v. *Heirs of Pizá,* 64 P.R.R. 938; *Cruz* v. *Andrini,* 66 P.R.R. 119, 121; *Fernández* v. *Heirs of Fernández,* 66 P.R.R. 831, 834; *Elicier* v. *Heirs of Cautiño,* 70 P.R.R. 407, 412; *Rossy* v. *Martínez,* 70 P.R.R. 703, 709, and *Vargas, etc.* v. *Jusino,* decided May 12, 1950.)"

On appeal plaintiff argues briefly that the lower court erred (1) in holding that the action had prescribed; (2) in holding that Act No. 243 of May 12, 1945 is only prospective and (3) in not granting the complaint.

Although appellant is right in his theory that because of his status of adulterine child and of the lack of cause of action of filiation under the Spanish Civil Code — which did not give any cause of action to adulterine children —there was no term of prescription that could run against plaintiff, and since neither § 137 of the Spanish Civil Code, nor § 199 of the Revised Civil Code, nor § 194 [1] as added by Act No. 73 of March 9, 1911—repealing § 199—are applicable, the fact is that since this action was filed on October 29, 1947, and since it should have been prosecuted according to Act No. 229 already mentioned "in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children" said action had prescribed, because it was not established within one year after the effectiveness of said Act, which created the special cause of action for the recognition filed herein. Let us explain.

It is obvious that plaintiff was unable to file any suit whatever while his father was living, nor one year after his death — as the latter died on August 5, 1918 — because he did not have, at the time, a cause of action of filiation, as he was an adulterine child. It was when Act No. 243 above mentioned became effective that his cause of action accrued.

---

[1] Corresponds to § 126 of the Civil Code, 1930 ed.

When the Legislature provided that the action should be exercised "in accordance with the procedure fixed by the Civil Code of Puerto Rico for the recognition of natural children" [2] it included in Act No. 243 — for the purposes of exercising the cause of action created therein — the prescriptive terms of § 126 of the Civil Code.[3]  Hence, this is not a case to which § 1864 of the Civil Code, 1930 edition, applies, inasmuch as said Section fixes a limitation period of 15 years for personal actions that have no specific term of prescription.  Since the special action of recognition created by Act No. 243 has the limitation periods fixed by § 126 of the Civil Code, we should rely on them and solve any conflict that may arise as to their application bearing in mind the intention of the Legislature in passing said Act.

In the case at bar such a conflict arises, for the presumptive father died in 1918 when plaintiff was already 25

---

[2] Commenting on the provisions of Act No. 243 of May 12, 1945 which amended Act No. 229 of May 12, 1942, the well-known writer Dr. Luis Muñoz Morales said on his Annotations to the Civil Code of Puerto Rico, Book I, page 414:

"The action for this recognition, according to said amendment shall be prosecuted according to the procedure stated in the Civil Code for the recognition of natural children; for that reason we must look to § 126 according to which, these actions can only be established during the life of the presumptive parents, and a year beyond their death, except if the parents shall have died during the minority of the child, in which case, the child may bring his action during the first four years after he attained his majority."

[3] Said Section provides:

"The action for the recognition of natural children can only be established during the life of the presumptive parents, and a year beyond their death except in the following instances:

"1. If the father or the mother shall have died during the minority of the child, in which case, the child may bring his action before the first four years of his having attained his majority, shall have elapsed.

"2. If after the death of the father or mother there shall appear a written statement or document, of which no notice was previously had, wherein the child is expressly recognized.

"In this case the action shall be established within the next six months after the document has been discovered.

"The recognition of a child not having the qualifications provided for in paragraph first of section 125 can be disputed by whomsoever may be affected thereby."

years old. Section 126 referred to in Act No. 243 provides that a filiatory action, in said case, shall be established *one year after his death.*[4] Of course, a literal construction of the language of this Section would give rise to the absurdity that the Legislature created a stillborn cause of action for plaintiff in this case and for all those in a similar position, while at the same time it would prove beneficial to others. Such was not the intention of the Legislature. Consequently, we hold that plaintiff herein could have established his special action of recognition within one year after the effectiveness of Act No. 243, for the provisions of § 126, adopted for limitation purposes, to the effect that an action may be filed only during the life of the presumptive parents, *and a year beyond their death,* means in his case — as in all others where the parents had died any time prior to the effectiveness of Act No. 243 — that he could establish it one year after the death of his presumptive father, counting from the date in which the cause of action was created by said Act of May 12, 1945. Any other interpretation would destroy the purpose of the Legislature on the one hand, and on the other it would tend to create confusion in the application of the law.

Notwithstanding the foregoing, we reach the inescapable conclusion that the action in this case — filed on October 27, 1947 — had already prescribed because it was commenced more than one year after the date of the effectiveness of Act No. 243.

█ As the appeal is not taken from the grounds of the opinion but from the judgment, itself the latter will be affirmed, *Bird* v. *Bird,* 69 P.R.R. 342; *Latorre* v. *Cruz,* 67 P.R.R. 696.

---

[4] The exceptions contained in § 126 regarding the general limitation periods to establish filiation actions do not apply to this case.